IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:16CR355 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | |
| MITCHELL OWENS, | ) | <u>UNITED STATES' SENTENCING</u> |
| | ) | <u>MEMORANDUM</u> |
| Defendant. | ) | |

The United States of America, by its counsel, Justin E. Herdman, United States Attorney, and Michael A. Sullivan, Assistant United States Attorney, and respectfully submits this memorandum setting forth the United States' position regarding the sentencing for Defendant Mitchell Owens.  For the reasons set forth below and those to be articulated at the sentencing hearing, the United States submits that a sentence within the applicable Guidelines range is appropriate in this case.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:   /s/ Michael A. Sullivan
Michael A. Sullivan (NY: 2249993)
Assistant U.S. Attorney
Suite 400, U.S. Courthouse
801 West Superior Avenue
Cleveland, Ohio 44113–1852
Tel. No. (216) 622-3977
E-mail: michael.a.sullivan@usdoj.gov

## FACTUAL BACKGROUND

To support its sentencing position, the United States offers the following summary of Defendant Owens' conduct. The United States also refers the Court to the description included in the Presentence Investigation Report ("PSR").  (R. 25: PSR, PageID 154-74).

On November 9, 2017, Defendant was indicted on two child pornography counts. Count 1 charged Receipt and Distribution of Visual Depictions of Minors Engaged in Sexually Explicit Conduct in violation of 18 U.S.C § 2252(a)(2); Count 2 charged Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (Id., PageID 157)

BitTorrent is a peer-to-peer ("P2P") network that allows users to share digital files. Between August 19, 2016 and September 15, 2016, an FBI task force officer was operating undercover on the BitTorrent network. (Id., PageID 157).  On twenty-one separate occasions that officer connected to the individual utilizing IP address 76.188.17.160, and downloaded 710 files of child pornography. (Id., PageID 158).  The agent searched the IP address through the American Registry for Internet Numbers, and discovered it was registered to Brittany Owens, Defendant's wife. (Id).  At that time, Defendant lived with his wife. Three of the files downloaded on September 15, 2016 were titled: "up_carlos_arse.jpg," "goldi_tied+and+hanging.jpg," and "Baby child H7x 1563.jpg." (Id).  From first to last, these images depict an adult male engaged in anal intercourse with a prepubescent female, "a nude female toddler hanging upside down with a black bandana around her mouth[,]… a rope wrapped around the toddler and a sharpie inserted in her vagina," and adult female engaged in oral to genital intercourse with a prepubescent nude male toddler.  (Id).

During the execution of the search warrant,  a forensic preview of a hard drive at

Defendant's home revealed at least 6 videos depicting child pornography, 3 of which are

described below:

    a) "Title: pthc- little boy fucks 4yo girl licks moms pussy. Description: The video is 3 minutes 9 seconds in length and depicts a prepubescent male and female juvenile engaging in genital to anal intercourse on a bed.

    b) Title: Andina5 Qtmpg 5yo Mexican Girl Very Loving Dad (Pthc, Pedo, Incest, Child, Sex, Kiddy). Description: The video is 16 minutes 36 seconds in length and depicts a prepubescent female juvenile approximately 5 years of age engaging in oral to genital intercourse with an adult male erect penis. At 5 minutes 15 seconds the same female juvenile is observed having genital to genital intercourse with an adult male. At 11 minutes 22 seconds the same female juvenile is observed being digitally penetrated and touched on her genitalia by an adult male.

    c) Title: Pthc- Pedo 14Yr Illegal Suck cum inside mouther swallow.mpg. Description: The video is 28 minutes 27 seconds in length and depicts a pubescent female juvenile with "budding" breasts engaging in oral to genital intercourse with an adult male erect penis. At 26 minutes 39 seconds the adult male is observed ejaculating from his penis into the mouth of the pubescent female juvenile."

(Id., PageID 159).  "PTHC" stands for "pre-teen hardcore."  (Id., PageID 158).  A subsequent

full forensic analysis of the hard drive recovered at Defendant's residence revealed Defendant

"possessed 3,432 images of child pornography and 12 video files of child pornography."  (Id.,

PageID 159).  Three items from this collection are described as follows:

    a) An image depicts a prepubescent female lying on the floor, focusing on her genitalia and anus;

    b) A video depicts a prepubescent male and female engaged in oral to genital intercourse, and is 5 minutes 49 seconds in length; and

    c) A video depicts an adult male and 3 nude prepubescent females, with the male engaging in genital to genital intercourse with each female. The video is 1 minute 49 seconds in length.

Defendant admitted he used P2P software called "Frostwire and uTorrent to download

files for a couple years and specifically between the dates of June 2016 and September 2016."

(Id., PageID, 158).  He said he would search for child pornography using "the search terms 'PTHC', 'Hussyfan', and 'yo- 10-17' (10-17 years old)[,]… find the torrent he wants to download,… approve the download and destination download folder and accept the download." Id. "Owens stated that he has been viewing child pornography for at least 2 years, and he engages in sexual acts of self-gratification to the child pornography he downloads." (Id., PageID 158-59).

Defendant made further statements that "he engages in sexual acts of self-gratification to children he observes in the public," and has sexual thoughts about specific 8-10 year old girls. (Id.).  Defendant "stated that he observed the neighbor girl next door, who is 10 years old, and would look at her buttocks thinking to himself, 'look at that ass' then he stated, 'but oh she is too young.'" (Id., PageID 159).  Finally, Defendant videotaped an adult female (A.W.) without her knowledge while she was in alone in her bedroom with her breasts exposed.  (Id., PageID 159-60).  When Defendant and his wife lived with A.W., A.W. informed law enforcement she "found recording devices hidden in the heating and cooling vents in the bathroom."  (Id.).  Further, "A.W. informed agents that the defendant would walk around with his penis exposed out of his pants when he was alone in the residence with her. He would act surprised when she walked past him in the house and observed his penis hanging out."  (Id.).

Defendant denies he stated to law enforcement that he masturbates to thoughts of specific underage girls and the specific statements about his 10-year-old neighbor. However, these statements were documented by a Task Force officer and an FBI agent, both of whom will be available to testify at the sentencing hearing. Defendant objects to the statement of A.W., as he was not provided such statements in discovery. Defendant has pointed to no authority entitling him to such statement during discovery and indeed Rule 16 does not require its production.

4

After Defendant learned of such statement from the first disclosure of the PSR, Defendant's

counsel requested a copy and the government provided such statement to Defendant's counsel.

## APPLICABLE LEGAL STANDARDS

A. Legal Precedent for Guideline Sentence

The United States' request for a guideline sentence in this case is consistent with the law

and research highlighting the danger posed by child pornography offenders. Numerous courts

have emphatically expressed the wretched consequences of child pornography. In United States

v. Goff, 501 F.3d 250, 258-59 (3rd Cir. 2007), the Third Circuit noted:

> Children are exploited, molested, and raped for the prurient pleasure of [defendant]
> and others who support suppliers of child pornography.  These small victims may
> rank as anyone else in [defendant]'s mind, but they do indeed exist outside his
> mind.  Their injuries and the taking of their innocence are far too real.  There is
> nothing casual or theoretical about the scars they will bear from being abused for
> [defendant]'s advantage.

The defendant in United States v. MacEwan, 445 F.3d 237, 249-50 (3rd Cir. 2006), tried to

downplay his receipt of child pornography by claiming that he was not a violent offender or a

trafficker of guns or drugs.  The Third Circuit was not persuaded, reasoning as follows:

> Congress found that where children are used in its production, child pornography
> permanently records the victim's abuse, and its continued existence causes the child
> victims of sexual abuse continuing harm by haunting those children in future years.
> Moreover, Congress found little distinction in the harm caused by a pedophile, be
> he a distributor or mere consumer in child pornography, because the mere existence
> of and traffic in child pornographic images creates the potential for many types of
> harm in the community and presents a clear and present danger to all children.
> Furthermore, it inflames the desires of . . . pedophiles . . .  who prey on children,
> thereby increasing the creation of and distribution of child pornography and the
> sexual abuse and exploitation of actual children who are victimized as a result of
> the existence and use of these materials.

Id. (citations omitted); see also United States v. Duhon, 440 F.3d 711, 718-20 (5th Cir. 2006);

United States v. Yuknavich, 419 F.3d 1302, 1310 (11th Cir. 2005); United States v.

Grosenheider, 200 F.3d 321, 332-34 (5th Cir. 2000).

5

The district court in United States v. Cunningham, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010), *affirmed* 669 F.3d 723 (6th Cir. 2012), imposed a guideline sentence on a child pornography the defendant.  In denying the defendant's challenge to the legitimacy of the child pornography guideline, the same one that applies to Owens, the court reasoned:

> There can be no keener revelation of a society's soul than the way in which it treats its children.  Given the current statistics surrounding child pornography, we are living in a country that is losing its soul.
>
> Child pornography is a vile, heinous crime.  Mention the term to your average American and he responds with immediate disgust and a sense of unease.  However, once it enters the legal system, child pornography undergoes sterilization.  The sterilization goes far beyond properly removing emotion from sentencing decisions.  Images are described in the most clinical sense.  Victims all too often remain nameless.  The only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement.

In United States v. Norris, 159 F.3d 926, 929-30 (5th Cir. 1998), *cert. denied*, 526 U.S. 1010 (1999), the defendant claimed that children depicted in child pornography are not victimized by receipt. Rather, the defendant claimed that the victimization occurred solely when the child pornography was produced. Id. The Fifth Circuit thoroughly repudiated that argument as follows:

> Norris takes an unrealistically narrow view of the scope of harms experienced by the child victims of the child pornography industry. Unfortunately, the victimization of the children involved does not end when the pornographer's camera is put away.  The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in these materials to suffer as a result of his actions in at least three ways.
>
> *First*, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials.  [T]he materials produced are a permanent record of the children's participation and *the harm to the child is exacerbated by their circulation*. . . .  The consumer who merely or passively receives or possesses child pornography directly contributes to this continuing victimization.
>
> *Second*, the mere existence of child pornography represents an invasion of the privacy of the child depicted.  Both the Supreme Court and Congress have explicitly acknowledged that the child victims of child pornography are directly harmed by

6

this despicable intrusion on the lives of the young and the innocent . . . The recipient of child pornography obviously perpetuates the existence of the images received, and therefore the recipient may be considered to be invading the privacy of the children depicted, directly victimizing these children.

*Third*, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials. As Congress put it in explicit factual findings:

> [T]he existence of and traffic in child pornographic images . . . inflames the desires of child molesters, pedophiles and child pornographers, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials.

Plainly, Congress has described a chicken-and-egg scenario in which it would be impossible to determine whether child pornographers or consumers of child pornography were initially responsible for the creation of the child pornography industry. The underlying point, however, is that there is no sense in distinguishing, as Norris has done, between the producers and consumers of child pornography. Neither could exist without the other. The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects.

*Norris*, 159 F.3d at 929-31 (emphasis in original) (citations omitted).

      B. <u>Departures in Child Pornography Cases</u>

Owens incorrectly argues for a downward departure pursuant to U.S.S.G. § 5H1.3 based on his military service and diagnosed PTSD. (Def.'s Sentencing Memorandum, pp. 23-24). However, § 5H1.3 does not allow for departures in child pornography cases. Congress sought to restrict the ability of courts to grant downward departures in cases of sexual exploitation of children with the PROTECT Act[1], which amended 18 U.S.C. §§ 3553(b)(2) and 3742(e). The instant offenses involve violations of 18 U.S.C. §§ 22(a)(2) and 2252A(a)(5)(B), under Chapter

---

[1] Pub.L. 108-21, 117 Stat. 650 (April 30, 2003)

110 of the United States Code, which are covered offenses under § 401(d) of the PROTECT Act and Section 3553(b)(2)(A) of the United States Code.

The grounds for a downward departure in a child pornography case are addressed in U.S.S.G. § 5K2.0(b).  This guideline section states:

> The grounds enumerated in this Part K of Chapter Five are the sole grounds that have been affirmatively and specifically identified as a permissible ground of downward departure in these sentencing guidelines and policy statements.  Thus, notwithstanding any other reference to authority to depart downward elsewhere in this Sentencing Manual, a ground of downward departure has not been affirmatively and specifically identified as a permissible ground of downward departure within the meaning of section 3553(b)(2) unless it is expressly enumerated in this Part K as a ground upon which a downward departure may be granted.

The Commentary to U.S.S.G. § 5K2.0 further states that the standard for a downward departure in child crimes and sexual offenses differs from the standard for other departures under the policy statement in that it includes a requirement . . . "that any mitigating circumstance that form the basis for such a downward departure be affirmatively and specifically identified as a ground for downward departure in this part (*i.e.*, Chapter Five, Part K)." Application Note 4(B)(i).  Neither military service nor mental condition proffered by Defendant are factors are affirmatively and specifically identified as specific offender characteristics as a permissible ground for departure under § 5K2.0. Therefore, the court should not apply a departure to the Guidelines calculation in this case.

Defendant also argues for variances below the Guidelines range because (1) he claims to not pose a risk of future danger to the community, (2) he is a first-time offender, and (3) his letters of support. The contention that he does not pose a risk to the community is directly contradicted by three important factors. First, his statements to law enforcement officials that he masturbates to thoughts of specific 10 year old girls he has seen in public indicates he is a ticking

8

time bomb who poses a real threat to the community.  Second, Defendant owns a personal arsenal of firearms, including silencers, fully-automatic machine guns and shotguns. These facts combined with Defendant's unattended PTSD indicate Owens is a particularly dangerous individual.

C.  Sentencing Commission Report

In his Sentencing Memorandum, Owens relies in part on a report prepared by the United States Sentencing Commission in 2013 to support his request for a downward variance. (Def.'s Sentencing Memo, p. 9). However, the Sentencing Commission promulgated numerous recommendations that are consistent with this Court's imposition of a Guidelines sentence for Owens. On February 27, 2013, the Sentencing Commission released its Report to Congress: Federal Child Pornography Offenses (the "Report"), which examines federal sentencing policy in child pornography cases, focusing primarily on non-production offenses under U.S.S.G. § 2G2.2.[2]  The Report, at its outset and throughout, confirms the extreme and multifaceted damage caused by child pornography.  The first of the "Highlights of the Report" contained in the Executive Summary section of the Report is the following:

> All child pornography offenses, including the simple possession of child pornography, are extremely serious because they both result in perpetual harm to victims and validate and normalize the sexual exploitation of children.
>
> - Child pornography offenses inherently involve the sexual abuse and exploitation of children. Typical child pornography possessed and distributed by federal child pornography offenders today depicts prepubescent children engaging in graphic sex acts, often with adult men. Approximately half of child pornography offenders in the United States possess one or more images (including still images and/or videos) depicting

---

[2] The Report can be found online at:

http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Sex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/index.cfm.

the sexual abuse of a child under six years old and approximately one quarter of offenders possess one or more images depicting the sexual abuse of a child two years old or younger.

- Child pornography victims are harmed initially during the production of images, and the perpetual nature of child pornography distribution on the Internet causes significant additional harm to victims. Many victims live with persistent concern over who has seen images of their sexual abuse and suffer by knowing that their images are being used by offenders for sexual gratification and potentially for "grooming" new victims of child sexual abuse.

- Child pornography offenses are international crimes. Images depicting the abuse of children are transmitted both domestically and internationally to offenders across the world, each of whom may continue to redistribute the same images. Once an image is distributed via the Internet, it is impossible to eradicate all copies of it. The harm to victims is thus lifelong.

- The ready availability of child pornography on the Internet, the existence of online child pornography "communities" that validate child sexual exploitation and a growing but largely non-commercial "market" for new images all contribute to the further production of child pornography and, in the process, to the sexual abuse of children.

- Although child pornography validates and normalizes the sexual abuse of children, social science research has not established that viewing child pornography "causes" the typical offender to progress to other sex offending against minors. For some offenders, however, obtaining sexual gratification through the use of child pornography is a risk factor for other sex offending against minors, as child pornography may strengthen existing tendencies in ways that may create a "tipping-point effect" if other risk factors are also present.

Report, pp. vi-vii.

The Report's early emphasis on the terrible impact of child pornography brings into clearer focus what the courts have known for some time—that child pornography has a highly destructive and lasting impact on the most vulnerable segment of society. Not only does it devastate children, but also it undermines all of society by perversely validating to some troubled individuals the sexual exploitation of increasingly younger children. This anomalous

10

normalization of what was previously deplorable conduct only serves to perpetuate and expand this terrible epidemic.

The Sentencing Commission has outlined some broad recommendations for revisions to the child pornography guidelines to better reflect the Commission's findings and the present state of the child pornography landscape. Report, p. 322.  The Commission proposed the following three categories of offender behavior as "the primary factors" that should be considered in imposing sentences in § 2G2.2 cases:

1)    "the content of an offender's child pornography collection and the nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained and protected his collection over time, including through the use of sophisticated technology);"

[Owens' collection of child pornography exceeded 3,000 images and dozens of lengthy videos. Many images depicted sadistic or masochistic abuse of prepubescent children. Indeed, the images and videos downloaded by the Task Force Officer, from Owens computer, were particularly sadistic and violent.]

2)    "the degree of an offender's engagement with other offenders—in particular, in an Internet "community" devoted to child pornography and child sexual exploitation; and"

[Defendant was virtually engaged with an expansive community of child pornography distributors through the P2P programs he utilized like Frostwire and uTorrent. Defendant stated he understood that his collection was freely available to other users, and the FBI agent in fact downloaded hundreds of child pornographic images and videos from the Defendant.]

3)    whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense.

[Defendant made a series of statements that he engages in masturbation to thoughts of specific 10-year-old girls in he saw in public. Further, he videotaped A.W. undressing in her bedroom, and walked around A.W.'s house with his penis out and acted surprised if she saw him.]

Report, p. 320.

The Commission also noted that:

> [T]he presence of aggravating factors from any of these three categories, even without the presence of any aggravating factors from the other two categories, warrants enhanced punishment depending on the degree that aggravating factors from that category are present in a particular case. The presence of aggravating factors from multiple categories generally would warrant a more severe penalty than the presence of aggravating factors from a single category.

Report, p. 321. Although these revisions are not binding, consideration of these factors suggests that a Guidelines sentence remains appropriate for Owens. Based on the relevant conduct in this case the Government submits that Owens is exactly the kind of offender Congress intended the Guidelines apply to, and a sentence of five years would likely have little to no deterrent effect on him at all.

In addition, Congress has not provided any indication of whether it accepts or rejects any of the recommendations in the Report, and may well disagree with any or all of them.  It may have further additions or modifications of its own.  Those changes, if they occur, could as easily increase as decrease the defendant's advisory sentencing range.

In fact, the most recent input from Congress suggests that, consistent with recent history, its interest is in increasing punishment for child pornography offenses:  the Child Protection Act of 2012 doubled the maximum penalty available for possessors of child sex abuse images depicting pre-pubescent minors effective December 7, 2012.  The Sentencing Commission did amend the child pornography guidelines in 2016 without making the expansive changes recommended by the Report.  Indeed, the amendments simply sought to clarify a Circuit split on the issue of assessing a distribution enhancement on peer-to-peer cases, as well as clarifying the proof necessary to support an enhancement for distribution for the expectation of receipt of a

thing of value other than pecuniary gain.  The Commission also added, as a specific offense

characteristic (and a 4-pointy enhancement), possession of images depicting the sexual

exploitation or abuse of an infant or toddler.

## SENTENCING GUIDELINES COMPUTATION

    A.  <u>Defendant qualifies for all sentencing enhancements listed in the PSR, and his total offense level should therefore be 34.</u>

The Sentencing Commission deliberately set the base offense level at 22, purposefully

leaving room for frequently applied enhancements in child pornography cases:

> The Commission determined that a base offense level of level 22 is appropriate for trafficking offenses because, when combined with several specific offense characteristics which are expected to apply in almost every case (e.g., use of a computer, material involving children under 12 years of age, number of images), the mandatory minimum of 60 months' imprisonment will be reached or exceeded in almost every case by the Chapter Two calculations.

U.S.S.G. App. C, Amendment 664, pp. 58-59 (emphasis added). As the Commission clearly

stated, they set the base offense level at 22, contemplating that almost every case would have an

enhancement for use of a computer, material involving children under 12 years of age, and

number of images  These enhancements were mandated by Congress, so the Commission

effectively built them into the base offense level by setting the base offense level lower than they

normally would have for an offense carrying a mandatory minimum five-year sentence.

    The government submits that Defendant qualifies for all of the following sentencing

enhancements. With his total offense level being 37, the final offense level is 34 after accounting

for his Acceptance of Responsibility. (R. 25: PSR, PageID 162).  Additional explanation is

provided where necessary.

- "Pursuant to §2G2.2(b)(2), if the material involved a <u>prepubescent minor</u> or a minor who had not attained the age of 12, increase by 2 levels." (<u>Id</u>., PageID 161).

- "Pursuant to §2G2.2(b)(3)(F), if the defendant knowingly engaged in <u>distribution</u>, other than distribution described in subdivisions (a-e), increase by 2 levels." (<u>Id</u>.).

BitTorrent is a peer-to-peer ("P2P") network that allows users to share digital files over the internet. Between August 19, 2016 and September 15, 2016, an FBI task force officer was operating undercover on the BitTorrent network. (<u>Id</u>., PageID 157).  On twenty-one separate occasions that officer connected to the individual utilizing IP address 76.188.17.160, and downloaded 710 files of child pornography.  (<u>Id</u>., PageID 158). That IP address was Defendant's. Because Defendant knowingly made his database of child pornography available for others to freely download his material, he qualifies for the 'distribution' enhancement.

- "Pursuant to §2G2.2(b)(4), if the offense involved material that portrays (A) <u>sadistic or masochistic conduct</u> or other depictions of violence; or (B) <u>sexual abuse or exploitation of an infant or toddler</u>, increase by 4 levels." (<u>Id</u>., PageID 162).

Here, the FBI TFO downloaded sadistic images that depict sexual abuse or exploitation of an infant or toddler from Owens' computer. Specifically, the image titled "goldi_tied+and+hanging.jpg," depicts a "nude female toddler hanging upside down with a black bandana around her mouth. There is also a rope wrapped around the toddler and a sharpie inserted in her vagina."  (<u>Id</u>., PageID 158).  Additionally, among the 3,432 images of child pornography and 12 video files of child pornography found on Defendant's hard drive, an image of a prepubescent nude female laying on her stomach focused on her genitalia and anus, a video of prepubescent children engaging in oral and genital intercourse, and a video depicting a nude adult male engaging in sexual intercourse with three nude prepubescent females laying on a bed. (<u>Id</u>., PageID 159).

- "Pursuant to §2G2.2(b)(6), if the offense involved the <u>use of a computer</u> or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material, increase by 2 levels." <u>Id</u>. at pp. 9 ¶ 28.

- Pursuant to §2G2.2(b)(7), if the offense involved <u>600 images or more</u>, increase by 5 levels. <u>Id</u>. at ¶ 29.

14

On twenty-one separate occasions that officer connected to the individual utilizing IP address 76.188.17.160, and downloaded 710 files of child pornography. (Id., PageID 158). Owens qualifies for each of the aforementioned sentencing enhancements.

Each of the enhancements is rationally based and is a reflection of either the Commission's institutional expertise or a Congressional mandate. The flaw in Defendant's argument that a universally applied enhancement is irrational is his conclusion that if statistics show that most offenders are subject to certain enhancements, then those enhancements should be absorbed into the base offense level. (Def.'s Sentencing Memorandum pp. 12-13). The reality is that law enforcement rightly targets the most serious offenders and may choose not to prosecute lesser offenders. As such, statistics showing how often certain enhancements apply is not a reflection of how the offense is usually committed, but rather is a reflection of the success of law enforcement in identifying and apprehending those who commit the offense in the most serious way.

B.   Defendant's objections to the application of enhancements

Owens objects to the application of the sentencing enhancements in U.S.S.G. § 2G2.2, making multiple flawed arguments. It is well-settled that "the Sentencing Guidelines … 'should be the starting point and the initial benchmark' for choosing a defendant's sentence." United States v. Bistline, 665 F.3d 758 (6th Cir. 2012) citing Gall v. United States, 552 U.S. 38, 49 (striking down the mandatory guidelines regime on Sixth Amendment grounds, not on grounds of disagreement with the policies animating the guidelines regime). Owens relies on the non-controlling Second Circuit's opinion in United States v. Jenkins, 854 F. 3d (2nd Cir. 2010) to argue the § 2G2.2 Sentencing Guidelines are "irrational." (Defendant's Sentencing Memorandum, p. 8).

Here, Defendant relies on the <u>Jenkins</u> Court's holding that sentencing enhancements should not be applied because they are "run-of-the-mill." (Defendant's Sentencing Memorandum, p. 8).  That Court devalued the effect that distribution of child pornography has on victims – an effect the <u>Bistline</u> Court recognized when it quoted a Victim Impact Statement, submitted by a victim pictured in the materials found in Bistline's possession. She wrote, "Thinking of all those sick perverts and viewing my body be ravished and hurt like that makes me feel like I was raped by each and every one of them." <u>Bistline</u>, 665 F.3d 758, 766 (6th Cir. 2012).

The <u>Bistline</u> Court also rejected the idea that they should ignore a law based on the theory that "two lawyers in the Justice Department … persuaded a novice Congressman to add them to the popular Amber Alert bill."  (Def.'s Sentencing Memorandum, p. 11), citing <u>United States v. Stern</u>, 590 F.Supp2d 945 (N.D. Ohio 2008).  There, the Court made clear that,

> "(t)he *only* antecedent circumstances relevant to the validity of Congress's directives with respect to § 2G2.2 are those spelled out in the Constitution itself: bicameralism and presentment. (citation omitted) Here, the directives met those requirements, which means they became law not because they were approved by a novice congressman, but because they were part of legislation approved by both Houses of Congress and then signed by the President."

<u>Bistline</u>, 665 F.3d 758, 763 (6th Cir. 2012) (emphasis added) citing U.S. Const. Art. I, sec.7.

Finally, to the extent Owens contends that sentencing disparities require this Court to reject the Guidelines on policy grounds, this argument also fails. "The fact that a district court may disagree with a Guideline for policy reasons and may reject the Guidelines range because of that disagreement does not mean that the court must disagree with that Guideline or that it must reject the Guidelines range if it disagrees."  <u>United States v. Brooks</u>, 628 F.3d 791, 800 (6th Cir. 2011); <u>see also</u> <u>United States v. Cunningham</u>, 669 F.3d 723, 733 (holding that a "district court is entitled to rely on the § 2G2.2 enhancements unless it has a reasonable policy basis for not doing

16

so"). Indeed, there are plenty of district courts that continue to impose sentences within Guidelines on sex offenders. As a result, this Court can and should rely on the sentencing enhancements contained in U.S.S.G. § 2G2.2.

## APPLICATION OF § 3553(A) FACTORS

A.  Nature and Circumstances of the Offense

The Government refers to the Statement of Facts section and Defendant's PSR for descriptions of the nature and circumstances of the offenses in the case at bar.

B.  History and Characteristics of the Defendant

Based on his history, the Court should have serious concerns for Defendant, the community, and the potential for recidivism.  Michael Bourke and Andres Hernandez conducted a study that compared two groups of child pornography offenders participating in a voluntary prison treatment program: men whose known sexual offense history at the time of sentencing involved the possession, receipt or distribution of child abuse images, but did not include any contact sexual abuse; and men convicted of similar offenses who had documented histories of contact sexual offending against at least one child victim.  Bourke and Hernandez, *The 'Butner Study' Redux: A Report of the Incidence of Hands-on Child Victimization by Child Pornography Offenders*, Journal of Family Violence, Volume 24, Issue 3 (April 2009) (Attached as Exhibit A). The study involved 155 sex offenders that had enrolled in an intensive, residential sex offender treatment program, 115 of who had no documented history of known contact sex offenses when sentenced. Cunningham, 680 F. Supp. 2d at 859. The other 40 offenders had revealed 75 victims when sentenced.  By the conclusion of the therapy, only 24 offenders still denied committing a contact sex offense.

Stated differently, 91 of 115 that had previously denied such conduct admitted to contact offending during treatment. Id. The average number of victims revealed by those who had previously denied contact offenses was 8.7. Those that previously admitted contact victims disclosed an average of 19.4 victims. The study went on to note that of the 24 offenders that continued to deny any hands-on offenses, nine were polygraphed on the issue. Only two of those nine passed. Id. "The dramatic increase (2,369%) in the number of contact sexual offenses acknowledged by the treatment participants challenges the often-repeated assertion that child pornography offenders are 'only' involved with 'pictures'". Id.

A report attached to Defendant's Sentencing Memorandum written by Dr. Jacqueline Bashcroff claims the Bourke and Hernandez study was debunked based on the idea that "inmates were given incentives to admit to contact offenses."  (Def's Sentencing Memorandum, EXHIBIT A, p. 7).  Dr. Michael L. Bourke responded to several misleading allegations and statements made about his study (attached as Exhibit B). For example, it was not possible for a detainee's admission of hands-on contact to improve their case with the 'Parole Board' because "the federal prison system has not had parole for decades, and thus this incentive did not exist." Letter from Dr. Michael L. Bourke to The Honorable Patti B. Saris, Chair, U.S. Sentencing Commission, (May 17, 2012), pp. 28 ¶ 16(3). Additionally, no inmates were removed from treatment for failure to make disclosures of hands-on victims. Id. at pp. 2 ¶ 1. In fact, a full fifteen percent of participants completed the program without making any hands-on contact admissions. Id. All program participants who entered after 2002 were polygraphed to confirm the truthfulness of their admissions. Id. at pp. 28 ¶ 16(4).

Moreover, the recent evolution of the technology that facilitates child pornography crimes further undermines the predictive power of past studies focused on a cohort of offenders

18

who lacked access to current technological tools that make it far easier to amass child pornography and hide activity from law enforcement. For example, an offender, once caught through an online investigation, would be more likely subsequently to utilize techniques like open wireless, public hot spots, proxies, anonymous networks, and encryption, many of which have been widely adopted only during the last few years, and all of which make detection by law enforcement considerably more difficult.

Congress also has repeatedly recognized that recidivism rates are particularly high for sex offenders. Blaisdell, Krista, Note, *Protecting the Playgrounds of the Twenty-First Century: Analyzing Computer and Internet Restrictions for Internet Sex Offenders*, 43 Val.U.L. Rev. 1155, 1192, n.150 (2009) (compiling Congressional statements regarding the high risk of recidivism among child sex offenders).  Courts have recognized this as well.  United States v. Pugh, 515 F.3d 1179, 1201 (11th Cir. 2008) ("child sex offenders have appalling rates of recidivism and their crimes are under-reported"); United States v. Allison, 447 F.3d 402, 405-406 (5th Cir. 2006) (Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders).

Defendant Owens' diagnosis of post-traumatic stress disorder acquired during his military service is a key factor in his history and characteristics. Defendant acknowledged he suffered from the symptoms of PTSD from his tour in Afghanistan and was officially diagnosed by the Veterans Administration two years after returning.  (Def's Sentencing Memorandum, p. 20).  When advised to "seek counseling at the Cleveland Veteran's Administration… (Defendant) was dismayed as to this process" and claimed "he did not have the time or the resources to travel to Cleveland on a regular basis for treatment and was afraid he would lose his job."  Id. at 21. Though Defendant was working for his own father-in-law, he never went to the

19

Cleveland VA knowing he suffered from a serious mental health illness. Instead, he turned to child pornography as an 'outlet.' His failure to follow through with the recommendations of counseling and mental health treatment from the VA is an indicator that he lacks the judgment to care for himself.

Additionally Defendant developed an obsession with firearms. Defendant has a personal arsenal of unlicensed weaponry. In his collection, he has three fully automatic weapons: a PPS 43, a 1968 Uzi, and a 1942 Mk2 Sten." (R. 25: PSR, PageID 160).   Owens also had:

> "two cylindrical devices with no manufacturer's markings or serial numbers (suspected firearm silencers); a STEN type 9mm Luger caliber firearm, unknown manufacturer, bearing no serial number; a Suomi M1931 type 9mm Luger caliber firearm, unknown manufacturer, bearing no serial number; a PPS-43 type 9mm Luger caliber firearm, unknown manufacturer, bearing no serial number; and an UZI type 9mm Luger caliber firearm, unknown manufacturer, bearing no serial number."

(Id.).  Defendant indicated he knew "these automatic weapons are illegal since he does not possess any ATF paper licensing or documentation to possess these weapons."  (Id.).  Instead of seeking mental health treatment, Defendant instead turned to child pornography and illegal firearms. These facts show Defendant is and continues to pose a danger to the community.

    C.  Need for the Sentence Imposed to Reflect Seriousness of Offense, Promote Respect for the Law, and Provide Just Punishment

Owens argues in his sentencing memorandum that a sentence of five years incarceration would accomplish the goals of sentencing and would not diminish the seriousness of his crime. In Bistline  the Sixth Circuit noted a reasonable sentence must reflect the seriousness of the offense or provide for any general or specific deterrence. United States v. Bistline, 665 F.3d 767-68 (6th Cir. 2012). A minimal sentence of five years would offend the seriousness of the offense and the impact on its victims. Congress has plainly indicated "[e]very instance of view images of child pornography represents a . . . repetition of their abuse."  18 U.S.C. § 2251 (Historical and

Statutory Notes: Child Pornography Prevention of 2006, Pub. L. No. 109-248, Title V, § 501, July 27, 2006, 120 Stat. 587, 623 (2006)).  The words of Congress and many courts echo the victims themselves. For many victims, the downloading of images is just as traumatic as the initial act of abuse. These victims express embarrassment of being depicted in these extremely vulnerable situations. They also express fear of being watched and subsequently recognized by people like Owens who fixate on videos and images of them.

While it is extremely unfortunate and troubling that Owens suffered mental trauma during his tours of duty in Iraq and Afghanistan, it is not a reason to ignore Defendant's conduct and the need for just punishment in this case. Defendant committed child exploitation offenses in the comfort and privacy of his own home, and he alone is responsible for not following through with offered treatment for his post-traumatic stress disorder ("PTSD").  The government submits that a sentence of only five years would not reflect the nature of the offense, and thus requests the court adhere to the Sentencing Guidelines range.

D.  Need for Sentence to Afford Adequate Deterrence

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. United States v. Irey, 612 F.3d 1160, 1206 (citing United States v. Ferber, 458 U.S. 747, 760 (1982) (The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product); Osbourne v. Ohio, 495 U.S. 102, 109-10 (1990) (It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand); United States v. Goff, 501 F.3d 250, 261 (3rd Cir. 2007) (Deterring the production of

21

child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing.); United States v. Barevich, 445 F.3d 956, 959 (7th Cir. 2006) (The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it. Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children.). In United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007), the court opined:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded, consumed himself and disseminated to others.  The greater the customer demand for child pornography, the more that will be produced.  Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor.  The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

In fact, the Bistline Court reversed a district court that failed to see any importance in general deterrence. See United States v. Bistline, 665 F.3d 758, 767 (6th Cir. 2012). The district court stated, "general deterrence . . . will have little [if] anything to do with this particular case." Id. The Sixth Circuit found "that [the district court's] statement is inexplicable, and in any event conflicts with our statement that 'general deterrence is crucial in the child pornography context[.]'" Id.  (citing United States v. Camiscione, 591 F.3d 823, 834 (6th Cir. 2010)).

Despite the fact that Owens and others who have an overwhelming desire for young children may not be deterred even if the sentence for the crimes was life, it is also true that others would certainly not be deterred if Owens received a low sentence. These offenders do talk to each other via the Internet and they are concerned about law enforcement even encrypting their hard drives to prevent detection.  There is much to be gained by a significant sentence—increased safety for our children.

22

**V.      CONCLUSION**

For these reasons and those to be articulated at the sentencing hearing, the United States

respectfully requests that the Court impose a term of imprisonment within the applicable

Guidelines range.

<div style="margin-left: 40%">

Respectfully submitted,

JUSTIN E. HERDMAN
Acting United States Attorney

</div>

By:      /s/ Michael A. Sullivan
            Michael A. Sullivan (2249993 NY)
            Assistant U.S. Attorney
            801 West Superior Avenue, Suite 400
            Cleveland, Ohio 44113
            Tel. No. (216) 622-3977
            e-mail: michael.a.sullivan@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on August 23, 2017, copy of the foregoing Government's Sentencing

Memorandum was filed electronically.  Notice of this filing will be sent by operation of the

Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Michael A. Sullivan
Assistant U.S. Attorney